**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BOBBY RAY COLLINS,** | : | **CIVIL NO. 4:CV-10-1828** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **WARDEN BRYAN BLEDSOE, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

<u>**MEMORANDUM**</u>

Plaintiff Bobby Ray Collins ("Collins"), an inmate confined at the United States

Penitentiary in Lewisburg ("USP Lewisburg"), Pennsylvania, initiated the above action <u>pro</u> <u>se</u> by

filing a <u>Bivens</u>[1]-styled civil rights complaint under the provisions of 28 U.S.C. § 1331.  Named

as Defendants are the following USP Lewisburg employees: Bryan Bledsoe, Warden; Kevin

Pigos, Clinical Director; Douglas McClintock, Emergency Medical Technician ("EMT"); Steve

Brown, Administrator of Health Services; Mark Peoria, Physician Assistant ("PA"); and Beverly

Prince, EMT.  Service of Collins' amended complaint (Doc. No. 21) was directed by order dated

October 7, 2010.  (Doc. No. 20.)

Various motions presently are before the Court for disposition.  As more fully explained

below, because Collins attached a motion requesting leave to amend along with his proposed

second amended complaint (<u>see</u> Doc. No. 35 at 11[2]), which subsequently was docketed as a

---

[1] <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388
(1971).  <u>Bivens</u> actions are the federal counterpart to § 1983 claims brought against state
officials.  <u>Egervary v. Young</u>, 366 F.3d 238, 246 (3d Cir. 2004) (citing <u>Brown v. Philip Morris
Inc.</u>, 250 F.3d 789, 800 (3d Cir. 2001)).  "[C]ourts have generally relied upon the principles
developed in the case law applying section 1983 to establish the outer perimeters of a <u>Bivens</u>
claim against federal officials."  <u>Schrob v. Catterson</u>, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2] Throughout this memorandum, citations to page numbers filed to the docket refer to the
page numbers generated by the CM/ECF System.

motion (Doc. No. 49), the Court will deny Defendants' motion to strike his second amended complaint (Doc. No. 45).  Also, because Collins filed a motion for leave to file a third amended complaint (Doc. No. 44) and a proposed third amended complaint (Doc. No. 44-1), the Court will deny as moot his motion for leave to file a second amended complaint (Doc. No. 49).  Because his proposed third amended complaint (Doc. No. 44-1) contains only minor amendments to his amended complaint (Doc. No. 21), the Court will grant Collins' motion for leave to file a third amended complaint (Doc. No. 44).  The Court will also deem Defendants' motion to dismiss, or in the alternative, motion for summary judgment (Doc. No. 42), which was filed in response to the amended complaint (Doc. No. 21), to address the third amended complaint (Doc. No. 44-1), and the motion will be granted.  In addition, the Court will deny Collins's motion to strike an exhibit to Defendants' statement of material facts (Doc. No. 74).

Finally, based upon the Court's determination that Defendants are entitled to judgment as a matter of law, Collins's motions for a temporary restraining order (Doc. No. 10), for an order for a physical and mental examination (Doc. No. 29), and to appoint counsel (Doc. No. 32) will be denied as moot.

## I.    PROCEDURAL BACKGROUND

Collins filed this action on August 31, 2010.  This case initially was assigned to the Honorable James F. McClure.[3]  On September 21, 2010, Collins filed a motion for a temporary restraining order (Doc. No. 10), which was accompanied by exhibits (Doc. Nos. 8, 9) and seven declarations (Doc. Nos. 11-17).  On October 1, 2010, Collins filed a motion seeking leave to amend his complaint (Doc. No. 19), which was accompanied by a proposed amended complaint

---

[3] This matter was reassigned to the undersigned on December 22, 2010.

(Doc. No. 19-1).  By order dated October 7, 2010, Collins's motion was denied as moot in light of the fact that service of his complaint had not yet been directed, and therefore, leave was not required for him to file an amended complaint.  (Doc. No. 20.)  The October 7, 2010 order also directed service of Collins's amended complaint (Doc. No. 21) and motion for a temporary restraining order (Doc. No. 10) on Defendants, and directed Defendants to respond to the amended complaint and motion within sixty days from the date of service.  (Id.)

The docket reflects that the individual Defendants were served with the amended complaint on October 22, 2010, and that the United States Attorney's Office was served with the amended complaint on October 28, 2010.  (Doc. No. 25.)

On November 18, 2010, Collins filed a motion requesting an order for a physical and mental examination (Doc. No. 29), which was accompanied by a supporting brief (Doc. No. 30).  On December 6, 2010, he filed a motion to appoint counsel.  (Doc. No. 32.)  Collins filed a "supplement" to this motion on February 4, 2011.[4]  (Doc. No. 56.)

On December 17, 2010, Collins filed a second amended complaint (Doc. No. 35), which was accompanied by a motion for leave to file an amended complaint (id. at 11) that was not docketed separately as a motion.  On January 7, 2011, Defendants filed a motion to strike Collins's second amended complaint on the basis that he had not sought leave to amend.  (Doc. No. 45.)  A supporting brief also was filed.  (Doc. No. 46.)  On January 11, 2011, Collins mailed another copy of his motion for leave to amend that he had included with his proposed second amended complaint at the time of filing on December 17, and the motion was entered on the

---

[4] An identical copy of Collins's "supplement" was filed on February 8, 2011.  (Doc. No. 63.)

docket on January 12, 2011.  (Doc. No. 49.)  On February 8, 2011, Collins filed his brief in opposition to Defendants' motion to strike.  (Doc. No. 59.)  On January 7, 2011, Collins filed a motion for leave to amend (Doc. No. 44) that was accompanied by a proposed third amended complaint (Doc. No. 44-1).

On December 23, 2010, Defendants filed a brief in opposition to Collins's motion for a temporary restraining order.  (Doc. No. 41.)  On December 27, 2010, a motion to dismiss, or in the alternative, motion for summary judgment was filed on behalf of Defendants.  (Doc. No. 42.)  On January 7, 2011, Defendants filed a supporting brief (Doc. No. 48) a statement of material facts (Doc. No. 47), and supporting exhibits (Doc. No. 47-1, 47-2).  Following a request for an extension of time, which was granted on February 8, 2011, Collins filed his opposition brief[5] (Doc. No. 60) and his "counter statement of facts" (Doc. No. 61-1[6]).  On February 22, 2011, Defendants filed a reply brief.  (Doc. No. 68.)

On April 6, 2011, Collins filed a motion to strike an exhibit to Defendants' statement of material facts (Doc. No. 74) along with a supporting brief (Doc. No. 75).  An opposition brief was filed on behalf of Defendants on April 20, 2011.  (Doc. No. 76.)

All motions are fully briefed and ripe for review and will be disposed of herein.  We will turn first to a discussion of Defendants' motion to strike the second amended complaint before

---

[5] The day after his opposition brief (Doc. No. 60) was filed, a nearly identical copy (Doc. No. 66) was received by the Clerk of Court for docketing.  The documents differ only in that the former version contains proposed orders and a certificate or service, while the latter does not, and the latter version contains a certificate of word count compliance, while the former does not.  Thus, the latter document was docketed as a supplement to Collins's opposition brief.

[6] Collins's statement of facts initially was filed at Document Number 61.  Due to poor copy quality, Document Number 61 was rescanned as Document Number 61-1.

4

considering Collins's request to file a third amended complaint.

## II.    DEFENDANTS' MOTION TO STRIKE

Defendants have filed a motion to strike (Doc. No. 45) Collins's second amended complaint (Doc. No. 35).  They argue that Collins's second amended complaint should be stricken because they assert that, at the time Collins filed it on December 17, 2010, he failed to seek leave of court to amend his complaint a second time as is required by Federal Rule of Civil Procedure 15(a).  (See Doc. No. 46 at 3.)  However, Collins attached a motion for leave to file an amended complaint to his proposed second amended complaint that was not docketed separately as a motion.  (See Doc. No. 35 at 11.)  This motion subsequently was docketed on January 12, 2011, after Collins re-mailed it to the Clerk of Court on January 11, 2011.  (Doc. No. 49.) Accordingly, the Court finds that Collins properly sought leave to amend his complaint a second time, and the Court will therefore deny Defendants' motion to strike.  At any rate, because Collins filed a motion for leave to file a third amended complaint (Doc. No. 44) and a proposed third amended complaint (Doc. No. 44-1), the Court will deny his motion for leave to file a second amended complaint as moot.

## III.   COLLINS'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

The Court now turns to a discussion of Collins's pending motion for leave to file a third amended complaint (Doc. No. 44), which is accompanied by a proposed third amended complaint (Doc. No. 44-1).   Upon review of Collins's proposed amendments, the Court concludes that the amendments are so minor that it is appropriate to grant Collins's request to amend and deem Defendants' motion to dismiss, or in the alternative, motion for summary judgment to address Collins's proposed third amended complaint.  The Court will summarize the

three sets of claims that Collins presents in his amended complaint and will discuss the amendments he proposes in his third proposed amended complaint.

## A.  Collins's Claims

Collins's first claim in his amended complaint is that staff at USP Lewisburg subjected him to cruel and unusual punishment and excessive force in violation of the Eighth Amendment when on August 22, 2009, on the Z Block of USP Lewisburg where Collins was confined, at the direction of Defendant Warden Bledsoe, Collins was placed in ambulatory restraints.  (Doc. No. 21 at 2 ¶ 1.)  Collins alleges that Lieutenant Benfer and Correctional Officer Whittaker each wrote an incident report stating that Collins refused to obey an order after he requested cleaning supplies before being transferred to a "hot unsanitized cell" and that Bledsoe then ordered that Collins be placed in hard iron restraints with chemical agents on the belly chain, clothes, and restraints.  (Id. at 2 ¶ 1; at 4.)  Collins alleges that he brought to Lieutenant Benfer's and Defendant McClintock's attention that there were chemical agents on the belly chain, clothes, and restraints, and also that the restraints were "excessively tight," but that nothing was done to loosen the restraints.  (Id. at 4.)  He avers that, as a result, he suffered from blisters, cuts, and swelling in the lower legs.  (Id.)  Collins further alleges that, after he exhausted his administrative remedies, he was subjected to retaliation and harassment by medical staff when they denied him adequate medical treatment by giving him the wrong medications and improperly crushed medications, and also discontinuing his medications.  (Id.)

In his second claim, Collins alleges that, following the August 22, 2009 incident where he was placed in restraints, he exhausted his administrative remedies against Defendants McClintock and Bledsoe, Lieutenant Benfer, Corrections Officer Whittaker, and the rest of the

administration who were involved in the incident, and that, as a result, he has been subject to harassment and retaliation by Defendants McClintock, Peoria, Prince, Brown, and Pigos in the form of denying him medical treatment and medications.  (Doc. No. 21 at 2 ¶ 2; at 5.)  He alleges that Defendants McClintock, Prince, and Peoria improperly have provided Collins's medications to him out of the labeled packaging and already crushed and also discontinued his hypertension and "psych medications" through Defendant Pigos as a form of retaliation and harassment.  (Id. at 5-6.)  He alleges that Defendants Peoria, McClintock, Prince, Pigos and Brown have conspired in an "ongoing campaign" to deny Collins his right to treat his hypertension disease and to be evaluated, diagnosed, and treated by an outside specialist, and have violated the Eighth and Fourteenth Amendments.  (Id. at 6.)

In his third claim, Collins alleges that on various dates, he requested to be seen by an outside orthopedist about his right knee and left great toe and to be seen by an outside kidney specialist, but was denied the right to be evaluated, diagnosed, and properly treated by Defendants Peoria, Pigos, and Brown as part of an "ongoing campaign" with the staff at the United States Penitentiary Terre Haute ("USP Terre Haute"), where Collins was housed before he was transferred to USP Lewisburg, to conspire to keep him from getting the treatment he really needs.  (Doc. No. 21 at 2 ¶ 3; at 7.)  He alleges that, in delaying and denying this medical treatment by an outside specialist, Defendants have been deliberately indifferent in violation of the Eighth Amendment and have denied him Equal Protection in violation of the Fourteenth Amendment.  (Id. at 7.)  Collins further alleges that Defendant Bledsoe "did nothing" to make sure that Collins receives the treatment he needs, and instead "denied and covered up in order to keep from giving the plaintiff medical treatment."  (Id.)

7

**B.      Analysis of Collins's Proposed Amendments**

Collins's statement of his first claim in his proposed third amended complaint (see Doc.

No. 44-1 at 3 ¶ 1; at 4) is identical to his statement in his amended complaint (see Doc. No. 21 at

2 ¶ 1; at 4), and thus he has not proposed any amendments to his first claim.

In his proposed third amended complaint, Collins amends his second claim as to

Defendant Peoria by specifying that Peoria was retaliating against him when he denied Collins

his medication on November 17, 2009, because Collins had exhausted administrative remedies

against him.  (See Doc. No. 44-1 at 6.)  Collins also eliminates his allegation that Defendants

Peoria, McClintock, Prince, Pigos, and Brown conspired to deny him medical treatment, and

instead seeks to allege that the "ongoing campaign" by these Defendants to deny him medical

care is a form of retaliation.  (See id.)  In addition, Collins alleges not only that these Defendants

are denying him his right to medical treatment for his hypertension, but that they also are

denying him his right to medical treatment for "a serious life threatening psychiatric depression

illness."  (See id.)  Finally, whereas in his amended complaint, Collins alleges that Defendants

have violated the Eighth and Fourteenth Amendments, in his proposed third amended complaint,

he alleges that Defendants' denial of adequate medical treatment violates the First, Fifth, and

Eighth Amendments.  (See id.)

Collins's proposal to amend his second claim by specifying that Defendant Peoria was

retaliating against him when he denied him medication is minor inasmuch as he already had

alleged generally in his amended complaint that the discontinuance of his medication by medical

staff was "a form of harassment and retaliation in a continuing campaign."  (See Doc. No. 21 at

6.)  Further, the Court can deem Defendants' motion to address this claim against Peoria

8

inasmuch as Defendants' motion has addressed Collins's retaliation claim relating to denial of medication and improper administration of medication generally as against all Defendants.  (See Doc. No. 48 at 21-23.)

As to Collins's request to amend his second claim to add an allegation that he was denied appropriate medical treatment not just for his hypertension, but also for his "serious life threatening psychiatric depression illness" (see Doc. No. 44-1 at 6), the amendment he proposes also is minor as evidenced by the fact that, in their motion addressing the amended complaint, Defendants have argued generally that a dispute over the adequacy of medical care is insufficient to state an Eighth Amendment claim.  (See Doc. No. 48 at 26.)  Thus, the Court will deem Defendants' motion to address the proposed amended claim that Collins seeks to make as to his treatment for his psychiatric problems.

Finally, although Collins proposes a change to his statement of his constitutional rights that have been violated, and specifically alleges that his First, Fifth, and Eighth Amendment rights have been violated, as opposed to just his Eighth and Fourteenth Amendment rights, his proposed change in identification of the Amendments that have been violated does not alter the core of his allegation, which is that he has been denied adequate medical treatment, and which has been addressed by the arguments raised in Defendants' motion to dismiss, or in the alternative, motion for summary judgment as to the amended complaint.  (See Doc. No. 48 at 23-27.)

In his proposed third amended complaint, Collins alters his third claim in that he eliminates references to a violation of equal protection, and instead alleges that the alleged delay and denial of medical treatment "has caused the plaintiff pain and suffering, deliberate

indifference and a right to be free from retaliation from exhausting his freedom of speech

through grievances." (Doc. No. 44-1 at 7.) Collins therefore alleges that his First, Fifth, and

Eighth Amendment rights have been violated. (Id.) Collins also eliminates his claim that

Defendants Peoria, Pigos, and Brown are participating in a "conspiracy" with USP Terre Haute

staff to deny him access to an outside specialist, and instead alleges that these individuals have

participated in an ongoing campaign to "keep the plaintiff from getting the treatment that he

really needs." (Id.) In addition, in his proposed third amended complaint, Collins makes a

request for "rehabilitational physical therapy." (Id.)

Collins essentially is proposing to amend his third claim by identifying it as a retaliation

claim rather than a conspiracy claim. Specifically, instead of alleging that Defendants Peoria,

Pigos, and Brown have conspired to deny him a right to be seen by outside specialists in an

"ongoing campaign" with the staff at USP Terre Haute, he alleges that this alleged action by

Defendants is a form of retaliation. Collins did not explicitly state a retaliation claim in his

amended complaint. However, he implied one in his allegation within his statement of his third

claim that Defendants are acting in their individual and official capacities in a "campaign" with

USP Terre Haute Health Services department to deny him his right to medical treatment, and in

identifying the motive for the denial of adequate treatment as Collins's ongoing litigation with

the staff at USP Terre Haute in a civil case that was pending in the United States District Court

for the Southern District of Indiana. (See Doc. No. 21 at 7.) Thus, because a retaliation claim

was already implied, Collins's proposed amendment is of minor significance. Moreover, where

in their pending dispositive motion Defendants address Collins's claim that he has been denied

adequate medical care in the context of his being given the wrong medication or improperly

crushed medication as a retaliation claim (see Doc. No. 48 at 21-23), their motion may be deemed to address Collins's allegation in his proposed third amended complaint that he has been retaliated against in the form of being denied adequate medical care in the context of evaluation and treatment by an outside specialist.

In his proposed amendment to his third claim, Collins also seeks to change his statement of the constitutional amendments that have been violated. (See Doc. No. 44-1 at 7.) As with his second claim, this change by Collins in the identification of the amendments that have been violated does not change the core of his allegation that he has been retaliated against in the form of being provided inadequate medical treatment, and thus is of minor significance. Finally, Collins's proposes amending his third claim to add a request for "rehabilitational physical therapy." (See Doc. No. 44-1 at 7.) Because Collins is requesting an amendment to a request for relief rather than to the claim itself, this proposed amendment has no effect on our analysis of whether he should be permitted to amend the claims contained in his amended complaint.

Based on the foregoing, the Court concludes that, because the amendments in the proposed third amended complaint are minor, the Court will grant Collins's motion to amend (Doc. No. 44), accept his third amended complaint (Doc. No. 44-1), and deem Defendants' motion to dismiss, or in the alternative, motion for summary judgment (Doc. No. 42) to address the third amended complaint. The Court now turns to an analysis of Defendants' dispositive motion.

## IV.  DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

### A.  Standards of Review

#### 1.  *Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is warranted only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556); see also Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, - - - U.S. - - - - , - - - -, 129 S. Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only  "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Twombly, 550 U.S. at 555)).  "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8."  Phillips, 515 F.3d at 232; see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court also may consider "undisputedly authentic" documents when the plaintiff's claims are based on the

documents and the defendant has attached copies of the documents to the motion to dismiss.  Id.
Moreover, the Court's role is limited to determining whether a plaintiff is entitled to offer
evidence in support of his or her claims.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The
Court does not consider whether a plaintiff will ultimately prevail.  See id.  A defendant bears
the burden of establishing that a plaintiff's complaint fails to state a claim.  See Gould Elecs. v.
United States, 220 F.3d 169, 178 (3d Cir. 2000).

         *2.    Summary Judgment*

Federal Rule of Civil Procedure 56(a) provides that "[t]he Court shall grant summary
judgment if the movant shows that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if
proof of its existence or nonexistence might affect the outcome of the suit under the applicable
substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is
entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material
fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  Id.  An
issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving
party."  Id.

Initially, the moving party bears the burden of demonstrating the absence of a genuine
issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant meets
this burden by pointing to an absence of evidence supporting an essential element as to which the
non-moving party will bear the burden of proof at trial.  Id. at 325.

All doubts as to the existence of a genuine issue of material fact must be resolved against

the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. Anderson, 477 U.S. at 256-57. The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Thus, summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

**B.    Discussion**

*1.    Motion to Dismiss*

Defendants argue that Collins has failed to make any allegations against Defendants

Pigos, Brown, Peoria, and Prince with regard to his first claim that he was subjected to excessive use of force and cruel and unusual punishment when on August 22, 2009, at the direction of Defendant Warden Bledsoe, Collins was placed in ambulatory restraints.  (Doc. No. 48 at 14-16.) Defendants argue that Collins's allegations against Defendant McClintock are insufficient to state a claim that McClintock violated his Eighth Amendment rights.  (Id. at 16-17.)  Finally, Defendants argue that Defendant Bledsoe lacked personal involvement in Collins's Eighth Amendment claims and that respondeat superior cannot form the basis for any claim against him asserted under Bivens.  (Id. at 17-18.)

In order to state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Consequently, civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.  Moreover, in Iqbal, supra, the Supreme Court emphasized that "[i]n a

§ 1983 suit or a <u>Bivens</u> action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  <u>Iqbal</u>, 129 S.Ct. at 1949.

Collins does not make any allegations in his third amended complaint that Defendants Pigos, Brown, Peoria, and Prince had any personal involvement in the events surrounding the use of restraints on Collins in August 22, 2009.  Absent these allegations, Collins has failed to allege plausible claims of excessive use of force and cruel and unusual punishment against these Defendants, and therefore, the Court must dismiss these claims against Defendants Pigos, Brown, Peoria, and Prince.

With respect to Defendant McClintock, Collins alleges that he "brung it to . . . EMT McClintock's attention there were chemical agents on the clothes, the restraints and that the iron restraints were excessively tight.  Nothing was done to loosen the restraint's [sic] even after the plaintiff complained, Health Services staff placed in Administrative Notes that there was no complaints from the plaintiff to cover up their torturing."  (Doc. No. 44-1 at 4.)  Collins also alleges that, as a result of being in the restraints, he received injuries, including blisters, deep cuts, and lower leg swelling.  (<u>Id.</u>)  The Court construes these allegations as asserting an excessive force claim and/or cruel and unusual punishment claims against McClintock.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  The Eighth Amendment is the primary source for protection of an inmate who has been convicted and is serving his sentence and claims that officials used excessive and unjustified force.  <u>See</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986); <u>Brooks v. Kyler</u>, 204 F.3d

102, 106 (3d Cir. 2000).  When a plaintiff asserts an excessive force claim under the Eighth

Amendment, "the central question is 'whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Brooks, 204 F.3d

at 106 (quoting Hudson v. McMillan, 503 U.S. 1, 7 (1992)).  To survive summary judgment,

therefore, the evidence must "support a reliable inference of wantonness in the infliction of

pain." Whitley, 475 U.S. at 322.[7]  Although there is no minimum threshold regarding the extent

of an injury required to establish excessive force[8], the prohibition of cruel and unusual

punishment nonetheless "necessarily excludes from constitutional recognition de minimis uses of

physical force, provided that the use of force is not of a sort repugnant to the conscience of

mankind." Hudson, 503 U.S. at 9-10.

Courts consider many factors in determining whether an official used excessive force in

violation of the Eighth Amendment's prohibition of cruel and unusual punishment. These factors

include:

> (1) 'the need for the application of force'; (2) 'the relationship
> between the need and the amount of force that as used'; (3) 'the
> extent of the injury inflicted'; (4) 'the extent of the threat to the safety
> of staff and inmates, as reasonably perceived by responsible officials
> on the basis of the facts known to them'; and (5) 'any efforts made to
> temper the severity of a forceful response.'

---

[7] Such an inference of wantonness can be made, for example, when the evidence
demonstrates that a guard intends to harm an inmate.  Brooks, 204 F.3d at 106 (citing Sampley v.
Ruettgers, 704 F.2d 491, 495 (10th Cir. 1983)).

[8] "[T]he absence of significant resulting injury is not a per se reason for dismissing a
claim based upon alleged wanton and unnecessary use of force against a prisoner."  Brooks, 204
F.3d at 109.  The extent of the injury, however, does "provide[ ] a means of assessing the
legitimacy and scope of the force" considering the attendant circumstances.  Id.

Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 321).

The Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). In order to state a claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment, an inmate must show that (1) he suffered a risk of "serious" harm; and (2) prison officials showed "deliberate indifference" to this risk. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." Id. In order to make this determination, "courts must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency." Walker v. Campbell, No. 09-282, 2010 WL 2891488, at *4 (W.D. Pa. May 4, 2010). The prisoner must show that the risk at issue is one that is intolerable in modern society. Helling v. McKinney, 509 U.S. 25, 35 (1993).

With respect to the second element, an inmate must demonstrate deliberate indifference on the part of prison officials. Farmer, 511 U.S. at 833; Wilson v. Seiter, 501 U.S. 294, 297 (1991); Rhodes v. Chapman, 452 U.S. 337, 347 (1981). This requires a court to determine, subjectively, whether the officials acted with a sufficiently culpable state of mind. Farmer, 511 U.S. at 835. The deliberate indifference standard has been defined as requiring that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

18

exists, and he must also draw the inference." Id., at 837. This is grounded in the axiom that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Id. at 834 (quoting Wilson, 501 U.S. at 297) (internal quotation marks, emphasis, and citations omitted)).

Accepting Collins's allegations as true, as the Court must do in disposing of the instant motion to dismiss, the Court finds that Collins does not state a claim of excessive use of force against McClintock because he makes no allegations that McClintock was involved in actually placing the restraints on him, but only alleges that he informed McClintock after the restraints already were placed on him that they were excessively tight.

However, the Court finds that Collins makes sufficient allegations to state a plausible claim of cruel and unusual punishment against McClintock. The placement of restraints on an inmate in an excessively tight manner is an "objectively sufficiently serious" punishment in that it potentially could cause serious physical harm. Further, Collins's allegation that he informed McClintock that the restraints were excessively tight and that McClintock did nothing to loosen them, is sufficient to state a claim of deliberate indifference that withstands a motion to dismiss. (See Doc. No. 44-1 at 4.) Accordingly, the Court will examine Collins's claim against Defendant McClintock later in this memorandum in analyzing Defendants' motion for summary judgment.

With respect to Defendant Bledsoe, Collins merely alleges that Bledsoe "wrote the order for plaintiff to be placed in ambulatory restraints" (Doc. No. 44-1 at 3 ¶ 1) and that "Senior Warden Bledsoe is grossly negligent in managing the peoples [sic] (officers) he was suppose[d] to supervise by allowing them to place the plaintiff in hard iron restraints excessively tight as a

form of torture . . ." (id. at 4).  Collins's allegations that Bledsoe directed the use of restraints

and that he was "grossly negligent" in managing the officers he was supposed to supervise are

insufficient to establish his personal involvement in any alleged wrong or any knowledge of and

acquiescence in any alleged application of the restraints in an excessively tight manner.  See

Iqbal, 129 S. Ct. at 1949.  Therefore, the Court must dismiss Collins's excessive use of force and

cruel and unusual punishment claims against Defendant Bledsoe.

The Court now turns to an analysis of Defendants' request for judgment as a matter of

law as to the remaining claims.

### B.   Motion for Summary Judgment

#### 1.   Undisputed Facts

Middle District of Pennsylvania Local Rule ("LR") 56.1 provides that "[a] motion for

summary judgment filed pursuant to Fed. R. Civ. P. 56, shall be accompanied by a separate,

short and concise statement of the material facts, in numbered paragraphs, as to which the

moving party contends there is no genuine issue to be tried."  LR 56.1 further requires that

statements of fact include references to the parts of the record that support the statements.

Defendants filed a statement of material facts that complies with LR 56.1.[9]  (Doc. No. 47.)

---

[9] Collins has filed a motion to strike the Declaration of Michael S. Romano, an Attorney
Advisor at USP Lewisburg, which Defendants submitted as an exhibit to their statement of
material facts.  (Doc. No. 74.)  Collins avers that the declaration (Doc. No. 47-1 at 3-8, Ex. 1)
should be stricken because it was written by legal counsel rather than by the individual
defendants, and that Romano did not actually observe what he states, but instead, the statements
contained in his declaration "are hearsay, opinions, hope or confidence, inadmissible,
unauthenticated and not a fact, and not on personal knowledge."  (See Doc. No. 75 at 2.)  There
is no merit to Collins's contention that Romano's statements within his declaration are not based
on personal knowledge.  Romano states in his declaration that, as part of his duties as Attorney
Advisor, he has access to inmates' records, electronic data maintained on the BOP's SENTRY
computer system, Administrative Remedy data, BOP Program Statements, and PACER.  (See

20

LR 56.1 further provides that the nonmoving party's statement of facts must respond to the numbered paragraphs set forth in the moving party's statement, and must "include references to the parts of the record that support the statements."  M.D. Pa. L.R. 56.1.  Although Collins filed a statement of material facts, which he refers to as a "counter statement of material facts in support of his opposition" to Defendants' motion (see Doc. No. 61-1 at 1), he has failed to file a statement that complies with LR 56.1 inasmuch the paragraphs in his statement do not correspond to the paragraphs in Defendants' statement.

Further, with the exception of a portion of his statement discussed in the next paragraph, while Collins responds to some of Defendants' statements, albeit in non-corresponding paragraphs, he either fails to include references to the parts of the record that support the statements, or, where he does include a reference, it is so general that it not possible to decipher exactly where in the record the support for the statements may be found.  For example, in many instances, Collins cites as support for his statements "Exhibits in Support of Plaintiff's Counter Statement of Facts" without any specific reference to a particular exhibit.  To the extent Collins is referring to the exhibits he filed on February 9, 2011, one day after he filed his statement of facts, the exhibits consist of 130 pages, which were separated by Collins into Attachments 8, 9, and 10 (Doc. Nos. 67, 67-1, 67-2) with no further identifying information either within the exhibits or in his statement of facts.  In other instances, Collins cites to his "Declaration" as support for his statements.  Collins has filed numerous declarations throughout the course of this

_____

Doc. No. 47-1 at 3.)  Further, Romano has submitted a record in support of each statement he makes in his declaration.  (See id. at 3-8.)  Accordingly, it is apparent that the information declared by Romano comes from personal knowledge in that it is derived from his own review of records.  Thus, there is no basis to strike his declaration, and Collins's motion (Doc. No. 74) will be denied.

litigation (see Doc. Nos. 11-17; 22, 23, 58, 62, 67, 70, 71, 72), and thus it is impossible for the

Court to know which declaration might possibly contain support for his statements.  In short,

while the Court is mindful of Collins's pro se status and has construed his pleadings liberally, it

is not the role of the Court to sift through the voluminous documents he has filed with little to no

labeling for identification purposes in order to discover pieces of evidence that might allow him

to defeat Defendants' request for judgment as a matter of law.

The only portion of Collins's statement that contains proper references to the portions of

the record that support his statements is in the section where he quotes at length from the BOP's

Program Statement ("P.S.") on the Use of Force and Application of Restraints, P.S. 5566.06.

(See Doc. No. 60-1 ¶¶ 95, 96; 102-108.)  Although Collins does not provide a specific reference

to where in the record P.S. 5566.06 appears other than a vague reference to, "Plaintiff's Exhibits,

Attachment – Use of Force", the Court found the document attached to Collins's "supplement"

to his motion for leave to file a second amended complaint, which was filed on February 8, 2011.

(See Doc. No. 64 at 28-49.)  Even though Collins properly cites to portions of P.S. 5566.06

within his statement of facts, he merely quotes from it.  In separate paragraphs within his

statement, he makes argument based on his interpretation of the P.S. rather than providing

statements of fact with references to the record that support his statements as required by LR

56.1, and therefore, he has not successfully opposed Defendants' statement.  (See Doc. No. 60-1

¶¶ 97-101; 109-113.)

Based on the foregoing, the Court will adopt Defendants' statements of fact.  See LR

56.1 ("All material facts set forth in the statement required to be served by the moving party will

be deemed to be admitted unless controverted by the statement required to be served by the

opposing party."); see also Harrison v. Ammons, Civil No. 1:05-CV-2323, 2009 WL 248834, at

*1, n.1 (M.D. Pa. Aug.19, 2009) (Conner, J.) (adopting moving party's statement of facts when

non-movant failed to comply with Local Rule 56.1); Novinger Group, Inc. v. Hartford Life &

Annuity Ins. Co., Civil No. 1:06-CV-0188, 2008 WL 5378288, at *1 n. 2 (M.D. Pa. Dec. 23,

2008) (Conner, J.) (same); United States ex rel. Paranich v. Sorgnard, 286 F.Supp.2d 445, 447 n.

3 (M.D. Pa. 2003) (Conner, J.) (same), aff'd, 396 F.3d 326, 330 & n. 5 (3d Cir. 2005).

Defendants' statement (Doc. No. 47) and supporting exhibits[10] (Doc. Nos. 47-1, 47-2) establish

the following undisputed facts material to Defendants' motion for summary judgment:

### a.   Facts Regarding Collins's Medical History

Collins arrived at USP Lewisburg on April 21, 2009, and, in the approximately eighteen

month period he had been confined at USP Lewisburg as of the time of filing of Defendants'

motion, he had more than seventy-five clinical encounters during which he was examined by

Health Services staff.  (Doc. No. 47 ¶ 11; Doc. No. 47-1 at 5, 7-8 ¶¶ 6, 17.)

The day Collins arrived at USP Lewisburg, a medical professional evaluated him as part

of an intake screening process.  (Doc. No. 47-1 at 5 ¶ 6; Id. at 13-17, Attach. B.)  During that

intake screening, Collins indicated that he was recovering and in pain from post right knee

surgery and that his right hand fracture still was not healed.  (Doc. No. 47-1 at 15.)  Collins was

provided with a wheelchair, but was encouraged to ambulate or to return the wheelchair for

crutches.  (Id.)  The following medication orders were renewed: an Albuterol inhaler, Aspirin,

---

[10] In support of their motion, Defendants have submitted the following exhibits: Ex. 1:
Declaration of Michael S. Romano, USP Lewisburg Attorney Advisor (Doc. No. 47-1 at 3-8),
which is supported by attachments (Id. at 9-22; Doc. No. 47-2 at 1-41); Ex. 2: BOP Clinical
Encounter October 9, 2009 Administrative Note (Doc. No. 47-2 at 42-45); and Ex. 3: BOP
Health Services Consultation Request (Id. at 46-47).

Fluoxetine, Hydrochlorothiazide, Lisinopril, Prioxicam, and Trazodone. (Id. at 16.)

On May 1, 2009, an x-ray of Collins's right hand was requested based upon his history of a fractured 4th metacarpal. (Id. at 5 ¶ 7; Id. at 19-20, Attach. C.)

On May 15, 2009, a sodium level of 115 was reported by Geisinger Medical Center, which prompted medical personnel to repeat the test, but Collins refused to have the blood tests repeated. (Id. at 5 ¶ 8; Id. at 22, Attach. D.)

On May 19, 2009, Collins was evaluated by an orthopedic surgeon. (Id. at 5 ¶ 9; Doc. No. 47-2 at 2-4, Attach. E.) The consultation revealed that Collins's 4th right metacarpal was healing, and a splint was applied with the instruction that it be worn for one month. (Id.) The administrative notes from the May 19, 2009 encounter reflect that Collins did not mention any knee pain complaints at that time. (Id.)

On June 5, 2009, and again on June 8, 2009, Collins refused to have his tuberculosis skin test. (Doc. No. 47-1 at 6 ¶ 10; Doc. No. 47-2 at 6, Attach. F, Attach. G.) As reflected in the June 5 administrative note, when informed that the test is mandatory, Collins responded: "I don't care, team me, I'll sue you" and an incident report was generated. (Doc. 47-2 at 6.)

On June 10, 2009, Collins was seen by a mid-level medical provider for complaints of recurring knee pain. (Doc. No. 47-1 at 6 ¶ 11; Doc. No. 47-2 at 10, Attach. H.) It was noted that Collins had surgical repair to his knee in February 2009, and x-rays and an orthopedical consultation were requested for treatment recommendations. (Id.)

On June 23, 2009, Collins was seen by an orthopedic surgeon regarding his 4th metacarpal fracture, and the surgeon discontinued the splint and provided education regarding post fracture care. (Doc. No. 47-1 at 6 ¶ 12; Doc. No. 47-2 at 12-13, Attach. I.) The

administrative notes from the June 23, 2009 consultation reflect that Collins did not mention any knee pain during the visit.  (Id.)

On September 21, 2009, Defendant McClintock was distributing morning medications in Collins's unit.  (Doc. No. 47-1 at 6 ¶ 13; Doc. No. 47-2 at 15, Attach. J.)  One side of the window to the door of Collins's cell was covered, which blocked McClintock's view of Collins taking his medication.  (Id.)  McClintock ordered Collins to remove the paper covering the window, but Collins refused and instead argued with McClintock.  (Id.)  McClintock noted that this behavior happened almost daily and that Collins was argumentative with medical staff when it was time for his medication.  (Id.)  After this encounter, McClintock advised Collins that his medications were going to be placed on hold pending a review by the clinical director and psychologist.  (Id.)  Thereafter, the clinical director approved the decision to discontinue Collins's medication due to non-compliance.  (Id.)  The pharmacy was notified that Collins's medications were being discontinued.  (Id.)  On October 9, 2009, Collins was seen by health services for a gastrointestinal clinic, and at that time, his medication was reinstated through the pill line.  (Doc. No. 47-2 at 42-45, Ex. 2.)

On November 17, 2009, Collins was seen in the morning pill line by Defendant PA Pigos, but refused his medication.  (Doc. No. 47-1 at 6-7 ¶ 14; Doc. No. 47-2 at 17-20, Attach. K.)  Pigos noted that Collins had an on-going history of refusing his medication in the pill line or accepting the medications into his cell but not taking them.  (Id.)  Pigos further noted that Collins used the medication delivery encounter as an opportunity to verbally abuse health services staff with threats and foul and inappropriate language.  (Id.)  Pigos also noted that Collins had to have his medication moved to the pill line due to non-compliant behavior.  (Id.)

On July 20, 2010, Collins expressed concern about his cardiac health and stated that he wanted to be on blood pressure medication even though his blood pressure was in normal range. (Doc. No. 47-1 at 7 ¶ 15; Doc. No. 47-2 at 22-23, Attach. L.)

On August 25, 2010, Collins was seen for right hand pain. (Doc. No. 47-1 at 7 ¶ 16; Doc. No. 47-2 at 25, Attach. M.) Due to Collins's history of 4th metacarpal fracture, an x-ray and a consult with an orthopedic surgeon were ordered. (Id.)

On October 19, 2010, Collins was seen by the clinical director in a chronic care encounter. (Doc. No. 47-1 at 7 ¶ 16; Doc. No. 47-2 at 27-28, Attach. N.) During that visit, the clinical director discussed with Collins his history of inappropriate behavior regarding his medication and his history of non-compliance. (Id.) Collins was advised that his medications would be returned on a trial basis, but that any further issues would result in a permanent medication discontinuance. (Id.)

On December 23, 2010, Collins was seen by the orthopedic surgeon, who noted that Collins had no pain in his right hand. (Doc. No. 47-2 at 46-47, Ex. 3.) Collins complained that his knee "pops and gives out." (Id.) An examination revealed swelling of the right knee. (Id.) The surgeon recorded his impression that Collins had a torn ACL in his right knee and that he recommended a scope with ACL reconstruction, a knee sleeve, and a bottom bunk. (Id.)

### b.      Facts Regarding the Use of Restraints

On August 22, 2009, Collins and his cell mate refused to submit to hand restraints to complete a cell rotation in Z-Block. (Doc. No. 47-1 at 8, Romano Decl., ¶ 18; Doc. No. 47-2 at 30, Attach. O.) Therefore, a use of force team was authorized by Warden Bledsoe and assembled. (Id.) Confrontation avoidance procedures proved effective, and both inmate

submitted to restraints without further incident.  (Id.)  Both inmates were medically assessed, and

no injuries were noted.  (Id. at 8 ¶ 18; Doc. No. 47-2 at 32-41, Attach. P, 8/22/09, 8/23/09 Exam

Notes.)

       2.    *Analysis*

### a.    Collins's Retaliation Claims

In his second and third claims, Collins alleges that Defendants have retaliated against

him.  Specifically, in his second claim, he alleges that Defendants McClintock, Prince, and

Peoria have retaliated against him by improperly providing him with medications out of the

labeled packaging and already crushed, and also by discontinuing his hypertension and "psych"

medications.  (Doc. No. 44-1 at 5-6.)  He also alleges that the ongoing campaign by Defendants

Peoria, McClintock, Prince, Pigos, and Brown to deny him medical treatment for "a serious life

threatening disease" and for a "serious life threatening psychiatric depression illness" is a form

of retaliation.  (Id. at 6.)  In his third claim, Collins alleges that the alleged delay and denial of

medical treatment by Defendants Peoria, Pigos, and Brown in the form of evaluation and

treatment by an outside orthopedist and kidney specialist is a form of retaliation.  (Id. at 7.)

In order to state a retaliation claim, a plaintiff must satisfy three elements.  First, a

plaintiff must prove that he was engaged in a constitutionally protected activity.  Rauser v. Horn,

241 F.3d 330, 333 (3d Cir. 2001).  Second, an inmate plaintiff must demonstrate that he

"suffered some 'adverse action' at the hands of prison officials."  Id. (quoting Allah v.

Seiverling, 228 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse

action "'sufficient to deter a person of ordinary firmness from exercising his First Amendment

rights.'"  Id. at 333 (quoting Allah, 229 F.3d at 225).  Third, a prisoner plaintiff must prove that

"his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  Id. at 333 (quoting Mount Healthy Bd. Of Educ. v. Doyle, 429 U.S. 274, 287 (1977)); Suppan v. Dadonna, 203 F.3d 228. 235 (3d Cir. 2000).

With respect to both his second and third claims, Collins identifies his filing of administrative remedies complaining about Defendants as the constitutionally protected activity he was engaged in that served as a motive for their retaliation in the form of improperly providing his medications, denying his medications, and denying him proper medical treatment in the form of evaluation and treatment by outside specialists.  (See Doc. No. 44-1 at 3 ¶ 2, at 6, 7.)  The filing of administrative remedies is a constitutionally protected activity that would satisfy the first element necessary to establish a retaliation claim.  See Robinson v. Taylor, 204 F. App'x 155, 157 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) and Davis v. Goord, 320 F3d 346, 352-53 (2d Cir. 2003)).

Arguably, improperly providing medications, denying medications, and denying and/or delaying proper medical treatment could meet the second required element of adverse action that is sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  However, even if this is the case, for the reasons that follow, Collins has failed to meet the third required element necessary to sustain a retaliation claim in that he has failed to provide any evidence that there was a causal relationship between his filing administrative remedies against Defendants and their methods of providing him with medical care.

As to the crushing of his medications, Collins argues in his opposition brief that BOP Health Services Staff, and in particular Defendant Prince, have retaliated by removing medications from their labeled blistered packaging and crushing them prior to arriving at

28

Collins's cell in violation of BOP policy and by refusing to stop this practice even though

Warden Bledsoe stated that Health Services Staff would start dispensing and crushing

medications in front of Collins.  (See Doc. No. 66 at 15.)  As support for his argument, Collins

has submitted a copy of a response by Warden Bledsoe to an administrative complaint he filed in

which Collins complained about Health Services Staff not crushing his medications in front of

him where Bledsoe explained that one of Collins's medications, Trazadone, is listed in the BOP

national formulary as a "crush medication," meaning that it must be crushed for administration,

and that he had directed Health Services staff to begin crushing this medication in front of him.

(See Doc. No. 67 at 5.)  However, even if it is true that Health Services staff did not begin

crushing Collins's medication in front of him as directed, Collins has not submitted any evidence

that their motivation in not following this direction is that he had filed administrative remedies

against them.  As such, he cannot establish the third element necessary to sustain a retaliation

claim as to the alleged improper crushing of his medications.

        With respect to the denial of Collins's medications, the evidence submitted by

Defendants in support of their motion for summary judgment establishes that the discontinuance

of Collins's medications following incidents on September 21, 2009 and November 17, 2009

occurred as a result of his failure on numerous occasions to follow orders and his frequent verbal

abuse of staff during medication distribution.  (See Doc. No. 47-2 at 15, Attach. J; Id. at 17,

Attach. K.)  Collins has failed to submit any evidence to contradict his medical records by

establishing that the discontinuance of his medications was caused by the fact that he filed

administrative remedies.  As such, he cannot establish the third required element to sustain a

retaliation claim as to the discontinuance of his medications.

Finally, as to Collins's allegations that he was denied the opportunity to be evaluated and treated by an outside orthopedist for his knee and by a kidney specialist, where the record demonstrates that Collins had consultations with an outside orthopedic surgeon on at least three occasions, and that, as to his kidneys, as Collins himself admits, he had five urinalysis tests, an ultrasound, and was scheduled for an evaluation of his prostate and bladder (see Doc. No. 66 at 16), Collins cannot even establish the second element necessary to sustain a retaliation claim that Defendants took adverse action against him in the form of denial of medical treatment, let alone the third element of causation, and therefore, this claim also fails.

Based on the foregoing, Defendants are entitled to judgment as a matter of law as to Collins's retaliation claims against them.

### b.    Collins's Eighth Amendment Claims

Collins alleges that Defendants exhibited deliberate indifference to his serious medical needs when they discontinued his medications "unjustifiably" (Doc. No. 44-1 at 6) and when they denied and/or delayed his medical care by allegedly not providing the opportunity to be evaluated and treated by outside medical specialists (Id. at 6-7).  He also alleges that Defendant McClintock subjected him to cruel and unusual punishment when he ignored Collins's complaints that the restraints that were placed on him on August 22, 2009 were "excessively tight."  (Id. at 4).

Collins first alleges that Defendants were deliberately indifferent to his serious medical needs when they discontinued his medications "unjustifiably" (Doc. No. 44-1 at 6) and when they denied and/or delayed his medical care by not providing the opportunity to be evaluated and treated by outside medical specialists (Id. at 6-7).

30

In order to establish an Eighth Amendment claim against a defendant for inadequate medical care, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).

The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 841. "The official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Thus, a complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . ." Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer v. O'Carroll, 991 F.2d 64, 67 (citations omitted.)

Furthermore, in the prison medical context, deliberate indifference generally is not found when some significant level of medical care has been offered to an inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. Oct 13, 2000) ("courts have consistently rejected Eighth

Amendment claims where an inmate has received some level of medical care").  Courts will

"disavow any attempt to second guess the propriety or adequacy of a particular course of

treatment . . . which remains a question of sound professional judgment."  <u>Little v. Lycoming

Cnty.</u>, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (quoting <u>Inmates of Allegheny Cnty. Jail v. Pierce</u>,

612 F.2d 754, 762 (3d Cir. 1979)).  Mere disagreement as to the proper medical treatment does

not support an Eighth Amendment claim.  <u>Lanzaro</u>, 834 F.2d at 346 ("Courts, determining what

constitutes deliberate indifference, have consistently held that mere allegations of malpractice do

not raise issues of constitutional import . . . Nor does mere disagreement as to the proper medical

treatment support a claim of an eighth amendment violation.");  <u>White v. Napoleon</u>, 897 F.2d

103, 110 (3d Cir. 1990) (mere disagreement over proper treatment does not state a claim upon

which relief can be granted).

      In the instant case, Collins has failed to submit any evidence that contradicts Defendants'

evidence consisting of Collins's medical records, which show that his medications were not

discontinued "unjustifiably", but instead were discontinued on September 21, 2009, and

November 17, 2009, as a result of Collins's persistent failure to follow direct orders and verbal

abuse directed toward staff.  (<u>See</u> Doc. No. 47-2 at 15, 17.)  The notes made by Defendant

McClintock on September 21, 2009, reflect that, when he arrived at Collins's cell that morning

for pill distribution, one side of the door window was covered with paper, and the other side was

not.  (<u>Id.</u> at 15.)  The notes reflect that McClintock had explained to Collins "numerous times

throughout this weekend" that he must be able to see Collins ingest his medication, and that he

was unable to see him with the paper there.  (<u>Id.</u>)  The notes also indicate that Collins "argues

with me every day and has not received his medication due to this for 3 days now."  (<u>Id.</u>)  On

that particular day, as reflected by McClintock's notes, Collins stated, "If your [sic] not gonna give me the fucking medication, then just get the fuck off my door!"  (Id.)  The notes further reflect that, when McClintock gave Collins the direct order to remove the paper from the window, his response was, "just get the fuck off my door!"  (Id.)  Accordingly, McClintock advised Collins that he was placing his medications on hold and that he subsequently obtained the approval of Clinical Director Dr. Pigos to notify the pharmacy to discontinue Collins's medication.  (Id.)  Collins's medications were reinstated on October 9, 2009 when he was seen by health services for a gastrointestinal clinic.  (Id. at 42-45, 10/9/09 Exam Note.)

Similarly, the notes by PA Peoria on November 17, 2009 indicate that Collins "continues to refuse am meds or patient will accept his meds into his cell but then not take them.  Patient uses the medication delivery encounter as an opportunity to verbally abuse the health services staff with threats and foul, inappropriate language."  (Id. at 17.)

In addition, Collins's medical records contain an Administrative Note made by Clinical Director Dr. Pigos on October 19, 2010 stating as follows:

> [D]iscussed with psychology and patient had medications cancelled after inappropriate behavior in the past.  He has complied with psychology treatemnt [sic] over the past few months.  On review he does have a long history of noncompliance but will trial a return of medications and if any further medication issues regarding improper taking of them he will be discontinued permanently.

(Id. at 27.)

In opposing the instant motion, the only way in which Collins has attempted to dispute the foregoing evidence is by reiterating his allegation from his third amended complaint that Defendants discontinued his medication as a form of retaliation.  (See Doc. No. 66 at 14-16.) However, as discussed in the foregoing section, he simply has failed to submit any evidence to

33

show a causal link between his filing of administrative remedies and the discontinuance of his medications. To defeat a motion for summary judgment, a non-moving party must go beyond pleadings by providing evidence showing that there is a genuine issue for trial. See Jones, supra, 214 F.3d at 407. Because Collins has failed to go beyond the unsupported allegations in his third amended complaint by presenting evidence that Defendants' discontinuance of his medications was a form of deliberate indifference, and the undisputed evidence demonstrates that the discontinuance occurred due to Collins's lack of cooperation, Defendants are entitled to judgment as a matter of law as to Collins's claim that their discontinuance of medications was a form of deliberate indifference.

With regard to Collins's allegations that Defendants denied and/or delayed his medical treatment, the record establishes to the contrary. It is undisputed that Collins had more than 75 clinical encounters with USP Lewisburg Health Services staff from the time of his arrival at the institution on April 21, 2009, through January 2011. (Doc. No. 47 ¶ 11.) It also is undisputed that, in those approximately eighteen months, Collins was evaluated by an outside orthopedic surgeon on three occasions, on May 19, 2009, June 23, 2009, and December 23, 2010. (Id. ¶¶ 18, 24, 44; Doc. No. 47-2 at 2-4, 12-13, 46-47.)

With respect to his complaints about his kidneys, Collins has submitted medical records showing that he has been evaluated regarding his complaints of kidney problems on various occasions. These records reflect the following:

On July 2, 2009, Collins requested a kidney function test, but Health Services staff noted that the test already had been performed on June 30, 2009, and the results were "normal." (Doc. No. 67-1, Pl.'s Attach. 9, at 23.)

On September 15, 2009, Collins was evaluated by Health Services staff after they received over twenty-five requests from Collins about kidney pain.  The notes reflect that, "Urine analysis and kidney function tests have been normal.  Has been treated for UTI multiple times."  (Id. at 16.)

On October 28, 2009, after Collins complained of "burning urination and kidney pain," a urinalysis was ordered.  (Id. at 22.)

Following a clinical encounter on November 2, 2010, during which Collins complained about kidney pain, it was noted that, "Review of chart shows long history of complaints about kidney problems that to date have been unsubstantiated."  (Id. at 14.)  Even so, a note was made stating, "Will get workup (imaging and lab studies) and if not resolved consider referrals to specialists in the future as testing indicates."  (Id.)  On November 3, 2010, Collins was referred for an ultrasound of his kidneys and bladder for "kidney pain."  (Id. at 28.)

The Report from the ultrasound of Collins's kidneys, performed on January 3, 2011, reflects that, "there is no evidence of renal mass, hydronephrosis, calculus or perinephric fluid.  Renal cortical thickness and echogenicity is within normal limits.  The paraaortic region is not well seen."  (Id. at 31.)  The impression was recorded as follows: "1. No hydronephrosis.  2. Small left renal parapelvic cyst."  (Id.)

These records submitted by Collins demonstrate that he received evaluation and treatment by USP Lewisburg Health Services staff for his complaints regarding his kidneys and, therefore, dispel any notion that Defendants were deliberately indifferent to his medical needs in this regard.  To the extent that he asserts that he should have received a consultation with an outside kidney specialist for the problems he reported, he merely is voicing his disagreement

with the medical care that he was provided, which is insufficient to form the basis of a

cognizable Eighth Amendment claim. See Lanzaro, supra, 834 F.2d at 346; White, supra, 897

F.2d at 110. Consequently, the Court finds that Defendants are entitled to judgment as a matter

of law as to Collins's claim of deliberate indifference against them as to an alleged denial and/or

delay of medical care, including through access to outside orthopedic and kidney specialists.

Collins next raises an Eighth Amendment claim based prison officials placing him in

restraints. Collins alleges that, after he was placed in restraints on August 22, 2009, he "brung it

to . . . EMT McClintock's attention there were chemical agents on the clothes, the restraints and

that the iron restraints were excessively tight. Nothing was done to loosen the restraint's [sic]

even after the plaintiff complained, Health Services staff placed in Administrative Notes that

there was no complaints from the plaintiff to cover up their torturing." (Doc. No. 44-1 at 4.)

Collins also alleges that, as a result of being in the restraints, he received injuries, including

blisters, deep cuts, and lower leg swelling. (Id.)

The Court determined in the section of this memorandum discussing Defendants' motion

to dismiss that Collins made sufficient allegations against Defendant McClintock to state a claim

of cruel and unusual punishment that withstands a motion to dismiss. However, Defendants

have submitted records which establish that McClintock is entitled to judgment as a matter of

law as to this claim. Specifically, Defendants have submitted administrative notes, including

four (4) notes that were made by McClintock, and two (2) notes made by other members of the

Health Services staff, regarding their periodic checks of Collins's ambulatory restraints that were

performed from the time he was placed in them at approximately 13:30 hours on August 22,

2009, and the time he was removed from restraints at approximately 10:00 hours on August 23,

2009.  (See Doc. No. 47-2 at 32-41, Exam Notes.)  These notes reflect the following:

When Collins was checked at approximately 1:30 p.m., when the restraints first were

placed on him, he offered no complaints, and no injuries had been sustained.  (Id. at 32.)  When

PA Hemphill entered a note at 6:16 p.m. regarding a check of Collins at 5:05 p.m., Hemphill

noted that Collins's capillary refill of his upper level extremities was normal; his lung sounds

were clear to auscultation; his heart had a regular rate and rhythm; he was conscious, alert and

oriented; and he was conversational.  (Id. at 35.)  When McClintock checked Collins at 9:56

p.m., he observed that distal circulation was intact in all extremities and that Collins appeared

well nourished and was conscious, alert, and oriented.  (Id. at 34.)  He also noted that Collins did

not declare any medical complaints, his physical exam was unremarkable, and that he instructed

Collins as to how to access medical care.  (Id.)

McClintock made the same observations as to Collins's condition when he assessed him

on August 23, 2009, just after midnight.  (Id. at 36.)  EMT Wells checked Collins at 7:45 a.m. on

August 23, and noted that Collins offered no complaints, was conscious, alert, and oriented,

cooperative, had no trauma noted, and moved all extremities on command.  (Id. at 37-38.)  Walls

made the same observations when he checked Collins again at 8:10 a.m. on August 23.  (Id. at

39-40.)  At 10:00 a.m. on August 23, McClintock noted that Collins was removed from

ambulatory restraint status, and that no medical complaints and no injuries were sustained.  (Id.

at 41.)

The foregoing records establish that Collins was assessed regularly while in ambulatory

restraints and that no injuries were observed by any Health Services staff, including McClintock,

who checked Collins.  As such, the records dispel any notion that McClintock would have

37

known of an excessive risk to Collins's health or safety where his examinations did not reveal

any such risk. We observe that Collins attempts to dispute these records by stating in a

declaration he submitted on February 9, 2011, as part of his opposition to the instant motion, that

the clothing placed on him on August 22, 2009,[11] before he was placed in restraints, contained

chemical agents and that he received injuries from being in the restraints, which he describes as

blisters, abrasions, cuts, irritated skin, lower leg (ankle) swelling, and leg scarring. (See Doc.

No. 65 at 2-3.)

Interestingly, Collins himself has submitted evidence, consisting of copies of his

administrative complaints and responses thereto, and additional medical records, that contradict

the aforementioned statements in his declaration. He has submitted copies of the administrative

remedies he filed with the Warden and BOP Central Office regarding the August 22, 2009

incident that involved the use of restraints.[12] (See Doc. No. 67-2 at 16, 24.) The Warden's

response to his administrative complaint states that "[n]o chemical agents were used during the

course of this incident." (See id. at 16.) The Warden's response further states that, "The

---

[11] Collins states in his Declaration that he also was placed in "excessively tight steel and iron restraints" on September 20, 2010, and October 7, 2010, and provides details regarding these incidents. (See Doc. No. 65 at 3.) However, Collins never presented any allegations with respect to these incidents in any of his complaints, and therefore, any claims he wishes to make stemming from the events on those dates are not part of this action.

[12] Collins has not submitted a copy of the administrative appeal he filed with the BOP Regional Office as to the August 22, 2009 incident or the response thereto; rather, he provided a copy of an appeal he filed with the Regional Office, and the response he received, regarding a September 20, 2010 incident during which he claimed to have unjustly been placed in ambulatory restraints. (See Doc. No. 67-2 at 25, 26.) However, it is apparent from the response he received from the Central Office regarding the August 22, 2009 incident that he had filed an appeal with the Regional Office as to this incident. (See id. at 24.)

medical assessment completed after the use of force indicated no injuries.  Subsequently, no

merit has been found to support staff misconduct." (Id.)

The response of the Administrator of National Inmate Appeals states that he found that

both the Warden and the Regional Director had adequately addressed Collins's concerns and

that, as indicated by the Regional Director, Collins's allegations had been referred to the proper

authority for review and no evidence was found to substantiate his claims.  (Id. at 24.)  He

further observed that, "[a] medical assessment conducted after you were placed in restraints

revealed you did not sustain any injuries."  (Id.)

Collins also has submitted copies of his medical records reflecting that, when he was

examined just two days after the incident on August 24, 2009, and again approximately a week

and a half later on September 2, 2009, he received treatment for minor injuries.  Collins has

submitted a copy of a sick call request he submitted that was dated August 24, 2009, in which he

claimed to have "blood clot blisters" as a result of being placed in restraints on August 22.  (See

Doc. No. 67-2 at 11.)  The notes from the examination of Collins that was performed on the

same date reflect as follows:

> [Complains of] open areas and abrasion from restraints over the week
> end.  **No open areas noted, small (eraser size) blister left ankle,**
> **non-draining, other abrasions closed and non-bleediong [sic].**
> Encouraged by this auther [sic] and EMT-P on D/W to leave blister
> intact and not op[e]n, gave bandaids and Abx oint to achieve this end.

(Id. at 10 (emphasis added).)  Notes submitted by Collins from an examination of him performed

approximately a week and a half later on September 2, 2009 reflect that he had submitted a

request stating, "Needs to be seen 'emediately' secondary to blood clot burns on ankles.  Would

like to be seen before these burst open and get infected."  (Id. at 12.)  The note reflects that

Collins was seen at his cell on that date and requested ointment for his blisters from restraints. (<u>Id.</u>)  A note regarding the examination of Collins's skin on September 2 states, "Scab noted on anterior ankle.  No signs of infection.  Well healed."  (<u>Id.</u>)

Based on the foregoing, Collins has failed to show that there is a genuine issue of material fact that McClintock did not subject him to cruel and unusual punishment where his examinations of Collins during periodic checks while he was in restraints, and upon his removal from restraints, did not reveal any excessive risk to his health or safety.  The records of Collins's medical evaluations in the days after the restraints were removed and his records of the administrative remedies regarding the incident further establish that there is no genuine issue of material fact that Collins was not subjected to cruel and unusual punishment, but instead received appropriate treatment for minor injuries.  Accordingly, Defendant McClintock is entitled to judgment as a matter of law as to Collins's cruel and unusual punishment claim against him.

## V.    COLLINS'S OTHER PENDING MOTIONS

In light of the fact that the Court will grant Defendants' motion to dismiss, or in the alternative, motion for summary judgment, Collins's requests for relief in his other pending motions for a temporary restraining order (Doc. No. 10), for a physical and mental examination (Doc. No. 29), and for the appointment of counsel (Doc. No. 32) are moot, and will be denied accordingly.

## VI.    CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion to strike Collins's second amended complaint (Doc. No. 45); the Court will deny Collins motion for leave to file a

second amended complaint (Doc. No. 49) as moot in light of his filing of a motion for leave to file a third amended complaint (Doc. No. 44) and proposed third amended complaint (Doc. No. 44-1); the Court will grant Collins's motion for leave to file a third amended complaint (Doc. No. 44); the Court will deem Defendants' motion to dismiss, or in the alternative, motion for summary judgment (Doc. No. 42) to address the third amended complaint (Doc. No. 44-1), and the motion will be granted.  In addition, the Court will deny Collins's motion to strike an exhibit to Defendants' statement of material facts (Doc. 49).

Finally, based upon the Court's determination that Defendants are entitled to judgment as a matter of law, Plaintiff's motions for a temporary restraining order (Doc. No. 10), for an order for a physical and mental examination (Doc. No. 29), and to appoint counsel (Doc. No. 32) will be denied as moot.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BOBBY RAY COLLINS,** | : | **CIVIL NO. 4:CV-10-1828** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **WARDEN BRYAN BLEDSOE, et al.,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, this 6th   day of   September, 2011, for the reasons set forth in the

foregoing memorandum, **IT IS HEREBY ORDERED THAT**:

1.   Defendants' motion to strike Plaintiff's second amended complaint (Doc. No. 45) is **DENIED**.

2.   Plaintiff's motion for leave to file a second amended complaint (Doc. No. 49) is **DENIED** as moot.

3.   Plaintiff's motion for leave to file a third amended complaint (Doc. No. 44) is **GRANTED**, and Plaintiff's proposed third amended complaint (Doc. No. 44-1) is accepted.

4.   Plaintiff's motion to strike an exhibit to Defendants' statement of material facts (Doc. No. 74) is **DENIED**.

5.   The motion to dismiss, or in the alternative, motion for summary judgment (Doc. No. 42) filed on behalf of Defendants is **GRANTED**.

6.   The Clerk of Court is directed to **ENTER JUDGMENT** in favor of Defendants and against Plaintiff.

7.   Plaintiff's motions for a temporary restraining order (Doc. No. 10), for an order for a physical and mental examination (Doc. No. 29), and to appoint counsel (Doc. No. 32) are **DENIED** as moot.

8.   The Clerk of Court is directed to **CLOSE** this case.

s/Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania